The Arctic Fire Insurance Company *vs.* Jeremiah Austin, President of the Albany and Canal Line of Tow Boats.

A tow boat company engaged in the business of towing is not, for such purposes a common carrier, nor subject to the liabilities assumed by such engagements.

The proprietors of a tow boat so engaged are liable for negligence in performing the special duty they have undertaken, and not otherwise.

The words "at the risk of the master or owners," in a permit for the towing of a boat, do not excuse the proprietor of the tow boat from liability for negligence in performing his contract.

The master of a tow boat is not chargeable with negligence because the captain of the boat towed fails to provide a watch or lights on board his boat.

The captain of a tow boat has not the entire charge and control of the boats he takes in tow. Although the latter are attached to his vessel, the captains and crew are on board, and are required to use care and caution on their part. They are not the servants of the captain of the towing boat.

It is the duty of the captain of the boat towed to see to its guidance, to steer it when necessary, and to take the necessary precautions on his part. If he omits such care and precaution, and injury arises from such neglect, he, and not the owner of the tow boat, is to bear the consequences.

Although the master of the towing boat may, as a matter of precaution, give directions as to what is necessary or proper to be done, on board of the boat towed, yet the omission to give such directions is not clearly negligence on his part. It may go to the jury as a fact bearing upon the question of negligence.

THE defendants, a tow boat corporation, were owners of a line of tow boats which plied between New York and Albany in 1863; among them were the boats "McDonald" and the "Austin." The owners of a cargo of corn in Buffalo on the 1st of August, 1863, shipped the corn on the canal boat "J. L. Parsons," to be conveyed from Buffalo to New York. At Albany, on the 19th of August, the *captain* of the canal boat engaged the defendants to tow the canal boat to New York. The tow boat was the "McDonald," and her tow was composed of a barge on one side, some canal boats on the other side, and four hawser tiers of canal boats, each tier having four boats, and all towed astern of the steamboat by a hawser some three or four hundred feet long. The "Parsons" was on

the port side of the head tier, made fast head and stern.
When nearly abreast of West Point, and while rounding
" Magazine Point," this down tow met an up tow belong-
ing to the defendants' line, the steamboat " Austin," having
in tow, on the port side, a barge, the " Washington," then
a canal boat next to the barge, also a number of canal
boats on the starboard side. The river is very narrow
(about 1500 feet) and crooked at that point, and the shores
bold and high. The witnesses differ in regard to the ex-
tent of the light there was that night. One class say that
it was a very light night, and objects could be seen very
plainly on the water at a distance; the other class say that
it was not dark but hazy, and that the high banks made it
quite shady where the collision occurred. Neither of the
tow boats blew a whistle on rounding the point where the
collision took place, as the custom required. Instead of
keeping off to the west shore, the " McDonald," with her
heavy tow, came down easterly of the middle of the river,
and kept straight on without even slacking or giving a
signal. Both boats being thus out of place, the collision
occurred, the head of the barge " Washington" being
brought square or bow on to the bow of the " Parsons."
The shock was very heavy, broke one or two strong head
lines on the barge, stove a hole through the head of the
canal boat, so that she sunk in twenty minutes, and caused
the barge to spring a leak, so that she would have sunk
if she had not received prompt attention. The up tow
was going at the rate of eight or nine miles per hour,
and the down tow about two miles per hour. Neither
tow boat had a watch on her bow, no lookout except the
pilot in the pilot-house. It was proved to be customary
and necessary to have such watch. It appears to be the
rule of navigation in the river for down boats to keep to
the west of the middle of the river in turning that point,
on such a tide, and for the up boat to hug the east shore,
or point. The canal boat " Parsons" had no watch on

deck at the moment of the collision. The testimony was contradictory as to the fact whether that boat carried a light exposed, but the jury disposed of that question under proper instructions from the judge. The jury found a verdict in favor of the plaintiffs. The plaintiffs were insurers of the cargo of corn, paid the loss, and took an assignment of the claim against the tow boat company, defendants, and appealed from the judgment.

——— ———, for the appellants.

*Geo. W. Parsons,* for the respondent.

INGRAHAM, J. It must be considered as settled, that a tow boat engaged in the business of towing, is not for such purposes a common carrier, nor subject to the liabilities assumed by such engagements. The case of *Wells* v. *Steam Navigation Co.* (2 *N. Y. Rep.* 208, *and* 8 *id.* 381) decides this point, and I know of no later decision to the contrary.

The defendants, then, were liable for negligence in performing the special duty they had undertaken, and not otherwise. The construction of the words, "at the risk of the master and owners," has been settled, and the cases above referred to, as well as that of *Alexander* v. *Green,* (7 *Hill,* 533,) decide that such a clause does not excuse the proprietor of the tow boat from liability for negligence in peforming his contract.

The point upon which a reargument was ordered, was whether the master of the tow boat was chargeable with negligence because the captain of the barge did not provide a watch or lights on board of the canal boat.

I do not understand the captain of the tow boat to have the entire charge and control of the boats he takes in tow. They are attached to his vessel, but the captain and crew are on board and are required to use care and caution on their part. They are not the servants of the captain of

the tow boat. His undertaking is to tow them. In doing so he is required to use skill and care to avoid injury, but he does not put his men on board of the boat towed. The captain of that boat must see to her guidance, to steer her when necessary, and to take the necessary precautions on his part. If he omits such care and precaution, and injury ensues from such neglect, he, and not the tow boat, is to bear the consequences.

The master of the towing boat might, as a matter of precaution, give directions as to what was necessary or proper to be done on board of the canal boat, and such directions would more strongly show the negligence of the captain of the towed vessel if not obeyed; but the omission to do so is not clearly negligence on his part. It may go to the jury as all the other facts in the case, and it becomes a question of fact for the jury to decide whether there was negligence, and if so, on whom are the consequences of such negligence chargeable.

This has been so settled by the Court of Appeals in *Milton* v. *Hudson River Steamboat Company*, (4 *Trans. Rep.* 252.) In that case it was held that the master of the towed boat was bound to use care and caution, and he was bound to use reasonable exertions to protect his property; if he did not, the towing boat was not liable. Grover, J., says: "The defendant is liable for a breach of his contract, but only for such damages as the owner of the towed boat by reasonable care and diligence could not guard against. I think, therefore, it was error to charge the jury that the captain or owner of the property towed must be deemed in law as having surrendered to the steamer such jurisdiction as is necessary to render that towing safe; and that the captain of the steamer would have the right to put lights upon her." And again, where he says: "I charge you as matter of law that it is not a negligent act on the part of the captain of the canal boat, not to keep a watch upon his boat at night."

This charge was evidently made under the impression that the whole charge of the boat towed was in the captain of the towing vessel, and that the former were not required to exercise any care or caution.

The case referred to, from the Court of Appeals, being in direct opposition to that ruling, the judgment should be reversed and a new trial ordered.

SUTHERLAND, J. There is much force in the opinion of Justice CLERKE, in this case; but upon the whole, I am of the opinion we should grant a new trial, with costs to abide the event. The reported cases do not seem fully to sustain the position I took in the opinion written upon the first argument; and if this position cannot be sustained, I am of the opinion there should be a new trial.

CLERKE, P. J., (dissenting.) If this action was brought by the owners of the canal boat Parsons, for injuries to the canal boat, caused by the negligence of either or both of the defendant's towing boats, the question for the jury would be, 1st. Whether such negligence was proved; and if they decided in the affirmative, did the owners of the canal boat, or their agents, by any negligence on their part, contribute to produce these injuries; and, if they did, the jury should be instructed to find for the defendant. In the case before us, the plaintiff is the assignee of the owner of a cargo of corn, who placed it on board of the canal boat, for transportation to the city of New York, and on the arrival of the boat in Albany caused an agreement to be made with the defendant to tow it by one of his steam towing boats, thence to its place of destination. Is the negligence of the master of the canal boat the negligence of the owner of the cargo? The case of *Milton* v. *The Hudson River Steamboat Company*, (reported in the 4th *Transcript Reports*, 252,) has been referred to as conclusive

on this question. That action was brought for the loss of a cargo of staves, shipped in a canal boat on the Erie canal, in some part of Onondaga county, caused by the alleged negligence of the towing company. Although the latter did not place the canal boat in between two deck boats in the tier of boats in which she was placed, as it had contracted to do, as the referee reported that the crew of the canal boat did not exercise proper care over the said boat in the position in which she was placed, the Court of Appeals decided that the towing company was not liable; and in doing so, of course decided that the contributory negligence of the crew of the canal boat was the negligence of the owners of the cargo. In both the opinions delivered in the Court of Appeals, the boat is treated as the boat of the shippers, and the question which I am now considering was not noticed by the court, and I presume not raised by the counsel. In that case it ap-pears that "the plaintiff had hired and chartered the canal boat, for the purpose of transferring the cargo of staves from Onondaga county to New York, paying the captain a price per day for his own and the crew's services." The evidence, or the stipulation, in the case before us, shows that White's Bank, the owner of the corn, shipped the same in the canal boat, and that the proprietors of the boat agreed with the bank to transport the same to New York. The relation of the owners of the cargo to the canal boat seems to me very different, in this case, from what it was in the case to which we have been referred. In the one, the owner of the cargo chartered and took possession of the boat, hiring the master and crew, paying them daily wages, and thus exercised complete control over both the boat, the master and the crew. Of course he was responsible for their negligence; and if that negli-gence contributed in any degree to the loss, whatever may have been the negligence of the towing company, the

latter was not liable. In the other, (the case before us,) the canal boat remained under the control of the proprietors of the boat, who employed and paid the master and the crew. .I am, therefore, of opinion that the plaintiff is not answerable for the negligence of the master and crew. of the canal boat Parsons, and that the only inquiry in this action is whether the master or crew of either or both of the towing boats (the McDonald coming down, or the Austin going up, both owned by the defendant) caused or contributed to the injury of which the plaintiff complains. This is in the nature of an action of *tort;* the act complained of is *tortious;* and the plaintiff has his election to proceed against all the *tort-feasors* jointly, or any one of them severally. If I am right in this view of the case, the judgment should be affirmed, unless errors were committed by the judge at the trial, in his rulings or his charge, prejudicial to the defendant. According to this view, he erred in submitting to the jury the question of negligence on the part of the captain and crew of the canal boat. But this was an error not prejudicial but advantageous to the defendant; as it increased his chances of a verdict in his favor, by telling the jury whether negligence was or was not committed by the defendant, if they were satisfied it was committed, in any contributory degree, by the master and crew of the canal boat, the defendant was entitled to a verdict. I have carefully examined the various exceptions to the rulings and the charge. Most of them relate to the question of negligence on the part of the master and crew of the canal boat; which have no application to the case, under the view I have taken. The only one about which I had any hesitation is the exception to the ruling at folio 349. The witness was asked to state whether any thing could be done on board the McDonald, to avoid the collision. On reflection, I think that it was properly excluded. The witness was called on behalf of the defendant, and was one of the pilots of the

McDonald. The question was leading, was too general, and called more for the opinion of the witness than for his recollection as to facts.

[NEW YORK GENERAL TERM, June 7, 1869. *Clerke, Ingraham* and *Sutherland,* Justices.]